## WESTERN BAG CO. *v.* UNITED STATES (No. 2095).[2]

1. MANIFEST CLERICAL ERROR.

The market value of merchandise imported from Calcutta was officially determined as of the date when the vessel bearing it passed an Indian point known as Budge Budge. In the duplicate consular invoice received by the importer this date had originally been stated as May 2, but an attempt had been made to correct it to read May 1. In this attempt an imperfect erasure of the 2 was had and the 1, instead of being superimposed upon the 2, was placed in front of it, so that the date appeared as May 12. Importer, having made a pro forma entry, amended it, fixing the market value of the merchandise as of May 12, and delivered his consular invoice to the collector. The triplicate consular certificate of the invoice received officially at the customhouse stated this date as May 1. Duty was levied on the market value on May 1, and this, being higher than the entered value, the addi-

---

[1] T. D. 38987.
[2] T. D. 38988.

tional duty provided for undervaluation by paragraph I, Section III, tariff act of 1913, was imposed. The clerical error made in stating the date was manifest from a comparison of the duplicate with the triplicate, both of which were in the hands of the collector as parts of the official record, and the additional duty should not have been imposed.

2. EVIDENCE.

Where the seller's declaration stated that the vessel left Calcutta on May 1, and the consular certificate stated that the vessel passed Budge Budge on May 12, the importer was justified in relying on the consular statement.

### United States Court of Customs Appeals, January 13, 1922.

APPEAL from Board of United States General Appraisers, Abstract 44091.

[Modified.]

*Frank L. Lawrence* (*Martin T. Baldwin* and *Thomas M. Lane* of counsel) for appellant.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Pelham St. George Bissell,* special attorneys, of counsel), for the United States.

[Oral argument October 28, 1921, by Mr. Lane and Mr. Charles D. Lawrence.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

Wheat bags shipped from Calcutta were on their arrival at Seattle, Wash., entered for duty by the importer at the value of 21 rupees 8 annas per 100 bags. The bags were officially appraised at 23 rupees per hundred, and because of their undervaluation in the entry an additional duty amounting to more than $3,000 was imposed upon the importation.

The importer protested against the assessment of additional duties on the merchandise and claimed in effect that as the entered value was the result of a manifest clerical error no additional duties should have been imposed.

The Board of General Appraisers overruled the protest and the importer appealed.

The material facts in the case are not disputed, and the only question raised by the appeal is whether the admitted facts warrant the conclusion that the "entered value" was caused by a manifest clerical error.

It appears from the record that on account of rapid fluctuations in the value of goods shipped from Calcutta it is the established customs practice to fix as the date of exportation the date on which the vessel carrying the goods passes a point known as Budge Budge, and that merchandise leaving Calcutta for the United States is officially appraised at its market value on that date.

The bags arrived in the United States before the coming to hand of the consular invoices, and as the importer was therefore without official information as to the date of exportation, he was in no position

to safely make an entry. He consequently made application to the Secretary of the Treasury to enter the bags on a pro forma invoice at 21½ rupees per 100 bags, with permission to amend his entry to conform to the facts as shown by the consular invoices upon their arrival. The Secretary of the Treasury granted the application of the importer and the bags were thereupon entered on a pro forma invoice at the value of 21½ rupees per 100 bags. He was informed by the customs officials that the date on which the vessel carrying the goods passed Budge Budge would govern in determining the value of the importation.

After making the entry permitted by the Secretary of the Treasury the importer received his duplicate consular invoice and relying on the consular certificate thereto attached, which recited that the vessel had passed Budge Budge on May 12, 1919, he amended his entry and by the amendment fixed the entered value at 21½ rupees per 100 bags, their market value on May 12, 1919.

Five days after presenting the amended entry he was informed by the acting appraiser that the bags had been appraised at 23 rupees and upon inquiry learned that the consular certificate attached to the *triplicate* consular invoice received at the customhouse certified that the date on which the carrying vessel passed Budge Budge was May 1, and not May 12, as shown by the certificate to the duplicate. The duplicate copy was immediately submitted to the deputy collector of customs in charge of appraiser's stores on his request and filed as part of the customs records to release the bond given for its production at the time of making the pro forma invoice. (See par. E, Sec. III, act of 1913.)

The consular certificate on the triplicate invoice shows distinctly marks of erasure, but the day of the month is so incompletely erased as to leave a clear figure 1 and a scarcely distinguishable figure 2 in the date. It is evident that the original date was either May 1 or May 2, and if the latter, that the 1 was inserted before the 2 after that figure had been more or less effectively erased. The date of passing Budge Budge on the consular certificate to the duplicate invoice shows marks of having been once erased, but the figures 1 and 2 are quite plain, although the 1 is darker and therefore a bit more pronounced than the 2. So clear, however, are the figures 1 and 2 that the collector himself reported to the Secretary of the Treasury that the date "was originally stamped May 2 and changed to May 1, *leaving some doubt as to whether the correct date was May 1 or May 2*" (italics ours), from which it is apparent that both figures so clearly appear in the date that a reading of 12 was fully warranted, whereas a reading of either 1 or 2 had nothing to support it except surmise.

The Board of General Appraisers held in effect that the importer could have informed himself as to the true sailing date by reading the

declaration of the seller made in Calcutta in which it was recited "that the market value on the sailing date 1–5–19, was as per broker's quotation Rs. 23." The date on which the vessel left Calcutta was probably May 1, but just why the importer was bound to accept that as the date on which the vessel passed Budge Budge is not apparent, especially as the American vice consul in the performance of his plain official duty made a certificate on the duplicate invoice which certified in terms that the vessel carrying the goods had passed Budge Budge on May 12. Had the importer relied on the seller's date as against the consular certificate and made his entry accordingly, it is perfectly evident that such an entry could not have been justified and that if incorrect the entry made on the faith of a date contradicted by the consular certificate left him wholly unprotected against the consequences of mistake.

All invoices must be made in triplicate and certified to by the proper consular officer of the United States. No importation of any merchandise exceeding $100 in value can be admitted to entry without the production of an invoice therefor certified to by such consular officer, and if an entry of the merchandise by a pro forma invoice is permitted a bond must be given for the production of the consular invoice certified to as required by law. (Pars. C, D, E, Sec. III, tariff act of 1913.)

Invoices of merchandise subject to appraisement on importation must be made out in triplicate, inasmuch as one copy is required for the consular office, one copy for the person requesting certification to be used in making entry of the merchandise and one copy for the collector of the port at which the merchandise is to be entered. (Secs. 2853, 2855, Rev. Stats., as amended by sec. 4, act of June 18, 1890; 21 Stats. L., 173.)

With that as the law it is evident that no official final entry of merchandise is possible without a certified consular invoice for such merchandise, and that in case such invoice is not at hand the importer can not be permitted to enter his merchandise on a pro forma invoice unless he gives a bond for the production of the certified invoice required by law. Therefore, the certified invoice received by the importer in this case was not only an official document, but it was a document essential to the making of a legal entry of his merchandise and one which he was bound to file with the collector at the time of such entry or in case the certified invoice was not available to produce it later on the obligation of his bond. The certified invoice was consequently not only a paper which the importer was required to present to the collector, but one which constituted a part of the official record of the importation in the customhouse.

For the statements in the invoice proper in this case the importer might well be held responsible, but he had no responsibility whatever

for the certification as to the date on which the vessel carrying his goods passed Budge Budge. Under the customhouse practice that date had to be certified to by the consular officer, and he having certified mistakenly or otherwise that the vessel passed that point on May 12, 1919, the importer was warranted in accepting that date and making his entry accordingly. That the consular officer did make a mistake is demonstrated by the fact that the duplicate and triplicate certificates, both of them issued by the consul and both of them records of the customhouse, do not agree as to the day of the month which fixed the date of exportation. True, the error is not manifest from the duplicate, but it is manifest from the records in the case; that is to say, from a comparison of the duplicate with the triplicate. The importer was obliged to accept the date certified to in the consular certificate furnished to him, and if he had entered his merchandise on the faith of any other date, he could hardly have excused himself, if the date selected by him proved to be incorrect and to be a date on which the goods were lower in value than they were on the date certified.

The decision of the Board of General Appraisers in so far as it sustains the appraised value is *affirmed*, and in so far as it sustains the imposition of additional duties it is *reversed*.